UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ALCOM, LLC, ) ) ) Plaintiff ) ) v. ) ) JAMES TEMPLE ) and ) BLACK MOUNTAIN TRAILERS, LLC, ) ) Defendants. ) | Docket No. |

## VERIFIED COMPLAINT

### INJUNCTIVE RELIEF REQUESTED
### JURY TRIAL DEMANDED

Plaintiff Alcom, LLC files this Complaint against former employee James Temple for temporary, preliminary and permanent injunctive relief and damages as a result of Temple's violations of his employment agreement, as well as against Temple and Black Mountain Trailer for violations of Maine's Uniform Trade Secrets Act.

## PARTIES

1. Plaintiff Alcom, LLC ("Alcom") is a Maine corporation with a principal place of business in Winslow, Maine. Alcom is in the business of trailer manufacturing and distribution.

2. Defendant James Temple ("Temple") is an individual citizen residing in Liberty Hill, TX. Temple is a former employee of Alcom.

3. Defendant Black Mountain Trailer ("Black Mountain") is a Nevada corporation with a principal place of business in Las Vegas, Nevada. Black Mountain is in the business of horse trailer manufacturing and distribution and is a direct competitor of Alcom.

## JURISDICTION AND VENUE

4. Alcom seeks injunctive relief pursuant to Fed. R. Civ. P. 65, and Maine's Uniform Trade Secrets Act, 10 M.R.S. § 1543, and money damages in excess of $75,000.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, based upon the diversity of the parties and because the amount in controversy exceeds $75,000.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a).

## FACTS

**A.   Alcom's Business and Business Model**

7. Alcom is North America's premiere aluminum trailer manufacturer and produces a diverse line of trailers, including horse and livestock trailers.

8. Alcom has manufacturing facilities in Maine, South Dakota and Montana, and serves more than 650 custom base dealers, including approximately 34 horse and livestock trailer dealers, throughout the United States, Australia, China, India and Kuwait.

9. Alcom's customers are dealers who, in turn, sell to end users.

10. Alcom's business model depends on fostering, growing and protecting its relationships with dealers, so that they continue to look to Alcom to fulfill these business needs as they arise.

11. Alcom's business model fosters and grows its relationship with dealers through the use of a highly trained sales force consisting of six full time sales representatives.

12. In order to be successful, a sales representative in the trailer industry must have technical knowledge about the product that Alcom manufacturers as well as strong interpersonal skills in order to develop trust and loyalty of its customers.

13. Accordingly, Alcom invests substantial resources in its sales representatives when they are hired and continuing throughout their employment.

14. When they are hired, Alcom's sales representatives receive specialized training regarding Alcom's products and throughout their tenure as employees, they are provided with Alcom's customer lists, pricing information, sales and marketing strategy and financial information so that they are able to have a competitive advantage over other trailer manufacturers in the market.

15. Each sales representative is assigned a certain type of trailer and/or certain territory so that the sales representative may foster close relationships with dealer customers within that particular trailer line and/or geographic area.

16. To further foster the relationship between Alcom and its dealer customers, Alcom takes steps to ensure that communication between the company and the dealer customer goes through that customer's sales representative.

**B.   Alcom's Trade Secrets**

17. In addition to the training, product specialization, geographical protection and other support that Alcom provides to its sales representatives as part of its business model, it also provides sales representatives with certain valuable trade secret information for use in the course of their work for Alcom.

18. Over the course of its fourteen years in business, Alcom has developed a comprehensive and proprietary body of information, including customer lists and information, preferences of existing customers, pricing strategies and information, sales techniques and financial data.

19. First, Alcom takes meticulous care to guard its customer and sales information from disclosure outside of the company including by making the information accessible only with the use of individually assigned and trackable passwords.

20. Second, Alcom requires all employees with access to trade secret information to execute a confidentiality agreement as a condition of their employment.

**C.    Temple's Employment with Alcom**

21. On or about April 14, 2015, Alcom hired Temple to work as a full time sales representative, with a focus on horse and livestock trailers. Temple was the sole salesperson in all of North America for the Frontier line of trailers, which is a line of aluminum horse trailers and livestock trailers, ranging in sizes for single to multiple horses and different types of livestock. Temple's job responsibilities consisted of developing and maintaining sales leads and growing Alcom's presence and book of business for all dealers with horse and livestock trailer needs in North America.

22. As a material condition of his employment, Temple was required to, and did sign, a Confidentiality, Non-Disclosure, and Non-Compete Agreement (the "Employment Agreement"). A true and correct copy of the Employment Agreement is attached hereto as *Exhibit A*.

23. The Employment Agreement contained a provision entitled "Non-Disclosures of Confidential Information" whereby Temple agreed "[a]t all times during and subsequent to [his] employment with the Company . . . to keep in strictest confidence the Company's Confidential Information . . ." and that he "will not use, disclose or duplicate the Company's Confidential Information without the written consent of the Company . . . ." *Exhibit A* at Section I.b. In addition, Temple agreed to return all Confidential Information in his possession upon termination of his employment. *Id.* at Section I.c.

24. The Employment Agreement contained a "Non-Solicitation of Customers" provision whereby Temple agreed not to "[s]olicit, attempt to solicit, or accept work of any kind, either on my own or as an employee, employer, consultant, agent, principal, partner, shareholder, or in any other individual or representative capacity, from any customer or customer-referral source for the Company with whom I had contact during my employment. For the purpose of this Section II(c), "customer" shall mean any person, business, or entity (i) to whom the Company has provided products or services within the one (1)-year period preceding the termination of [his] employment, or (ii) from whom [he] know[s] the Company is actively soliciting business with[in] the one (1)-year period preceding the termination of [his] Employment." *Id.* at Section II.c.

25. The Employment Agreement contained a "Non-Competition" provision whereby temple agreed, during his employment and for a period of twenty-four (24) months following his termination of employment, not to "[p]articipate in the ownership or control of, act as an employee, agent, or contractor of, or directly or indirectly engage in or render services to or on behalf of any person or entity that conducts business in North America and is competitive with the Company." *Id.* at Section II.a.

26. By executing the Employment Agreement, Temple explicitly acknowledged that "the Company has a legitimate need to protect itself from improper or unfair competition and to protect its Confidential Information, as well as the Company's customer relationships with both its prospective and existing customers to protect goodwill" and agreed that "the restrictions contained in this Agreement are reasonable and necessary to protect the Company's operations, legitimate competitive interests, and Confidential Information." *Id.* at Section III.

27. In addition, Temple acknowledged "the highly competitive nature of the Company's business and that irreparable harm would be caused by [his] violation of the restrictions contained [therein]." *Id.*

28. Temple further agreed "the Company's remedies at law for any violations of this Employment Agreement are inadequate and that the Company has the right to seek injunctive relief in addition to any other remedies available to it." *Id.* at Section V.

29. The Employment Agreement expressly provides for an award of attorney's fees and costs incurred in the event Temple breaches or defaults under its term. *Id.*

30. Temple was expected to service dealer relationships generated by prior salespeople and to generate new dealer relationships, while fostering and growing customer goodwill, and in doing so, had daily and weekly contact with dealers.

31. Alcom gave Temple significant support in developing sales and dealer relationships, including a weekly auto allowance, company credit card to cover fuel, travel, overnight and other business expenses, laptop and cell phone plan.

32. Temple established, on behalf of Alcom, customer trust and goodwill with the dealers within his product line and territory resulting in over $2 million in revenue for Alcom on an annual basis.

33. While working as a sales representative for Alcom, Temple was exposed to highly confidential sales and marketing information, including programs to incentivize sales by the provision of discounts, which information is highly confidential and should not be revealed to competitors and which Alcom takes extensive efforts to protect from misuse and disclosure.

34. In addition, Temple gained unique insight into the needs and operational requirements of the dealers he solicited within his territory on Alcom's behalf, including information about dealers' target customer base, customer profiles, decision makers, and marketing strategies.

**D.     Temple's Fraudulent Resignation from Alcom and Subsequent Employment with Black Mountain**

35.     On or about March 13, 2020, Temple resigned from employment with Alcom, representing to the company that he and his wife planned to go into the property management business.

36.     This representation was false and Temple knew it was false when he made it.

37.     On information and belief, contrary to Temple's representations to Alcom, he planned to accept employment with Black Mountain, a competitor of Alcom's, in violation of his employment agreement.

38.     On information and belief, Temple was negotiating his employment with Black Mountain before he left the employ of Alcom and in so doing, both he and Black Mountain were aware that his employment with Black Mountain would be a breach of his Employment Agreement.

39.     Temple's last day of employment with Alcom was March 13, 2020.

40.     Alcom's records show that on or around his last day of employment, Temple deleted the vast majority of information and communications on his company issued laptop and company email account.

41.     Alcom's records also show that on Temple's last day of employment, he sent two separate requests for Alcom's price books for the Frontier line of trailers.  Temple requested price books for the east coast and the west coast.

42.     Despite requesting the price books, Alcom's business records do not show that Temple was working on any last minute sales on Alcom's behalf (let alone multiple sales to dealers on two different coasts) on his last day of work before starting work with Black Mountain – a direct competitor.

43. Like Alcom, Black Mountain manufactures and sells horse trailers and related services to dealers.

44. Immediately after leaving Alcom, Temple began working as the Director of Sales and Marketing at Black Mountain and, upon information and belief, has an ownership interest in Black Mountain.

45. Almost immediately, thereafter, Alcom began to receive reports from dealers formerly serviced by Temple that he was soliciting their business on behalf of Black Mountain.

46. Specifically, Alcom received information from the following dealers on the following dates:

   a. On or about April 28, 2020, Leonard Truck and Trailer, Inc., stated that it had received communications from Black Mountain via Facebook.

   b. On or about April 20, 2020, Producers Co-Op Trailers received communications from Black Mountain via Facebook. Around this same time, Producers Co-Op Trailers received email communications from Temple. Alcom has since received confirmation that Producers Co-Op is now one of Black Mountain's dealers.

   c. In or around mid-April, 2020, T.D. Wall, Inc., received phone calls and text messages with trailer mock ups from Temple.

   d. In or around mid-April, 2020, Key R-D Trailer Sales received communications from Black Mountain via Facebook.

   e. On or about April 7, 2020, Scott's Recreation stated that it had received communications from Temple and/or Black Mountain.

47. Temple is soliciting some of Alcom's most profitable dealers. Of the dealers that Alcom knows Temple is soliciting, their cumulative sales for 2019 were approximately $2.7 million.

48. Temple's sales efforts for Black Mountain means that he is competing directly against Alcom.

49. In competing against Alcom, Temple is using and imparting to Black Mountain his knowledge of confidential and proprietary information, including, but not limited to, his knowledge of pricing, discounts, and promotional programs offered by Alcom to its dealers, Alcom's pricing strategies, profit margins, and related confidential information.

50. Temple is trading on the goodwill he fostered while employed with Alcom to harm Alcom's reputation and business. Alcom is suffering harm to its goodwill and reputation and will also suffer significant sales losses as a result of Temple's misconduct.

51. Immediately upon learning of Temple's misconduct, Alcom sent Temple and Black Mountain a cease and desist letter dated April 17, 2020. A true and accurate copy of this letter is attached as *Exhibit B*.

52. Despite giving Temple and Black Mountain ten days to provide assurances that they would honor the terms of Temple's Employment Agreement, no such assurances have been made.

53. Upon information and belief, Temple is continuing his employment at, and suspected ownership of, Black Mountain, and continuing to solicit Alcom's dealers in violation of his Employment Agreement.

## COUNT I

### Breach of Contract (Temple)

54. The allegations contained in paragraphs 1 through 53 of the Complaint are incorporated herein by reference.

55. As a condition of his employment and for valuable consideration, Temple executed the Employment Agreement with Alcom. The Employment Agreement prohibits Temple from

participating in the ownership or control of, or from working in a sales capacity for, a competitor for 24 months following the termination of his employment.

56. Temple is, on behalf of himself and/or for the benefit of Black Mountain, engaging in the sale and/or distribution of horse trailers and related products within in the same territory in which, and with the same customers with whom, he engaged in such activities for Alcom.

57. The Employment Agreement also prohibits Temple from soliciting Alcom's customers for 24 months following the termination of his employment.

58. Upon information and belief, Temple is, on behalf of himself and/or for the benefit of Black Mountain, soliciting Alcom's customers in his efforts to sell and/or distribute horse trailers and related products.

59. Upon information and belief, Temple is using confidential and/or proprietary information for his own benefit and/or for the benefit of Black Mountain while engaging in the sale and/or distribution of horse trailers and related products.

60. As a result, Temple's conduct constitutes a breach of the Employment Agreement.

61. Temple's unlawful and wrongful conduct and breach of the Employment Agreement has caused and will cause Alcom to suffer damages in excess of $75,000 and irreparable harm.

62. Temple's breach of his contractual obligations will continue unless enjoined by this Court. Alcom is without adequate remedy at law, and is threatened with irreparable loss, injury, and damage.

63. In addition, Alcom is entitled to actual damages, interlocutory and permanent injunctive relief against Temple, as well as an award of its attorney's fees and costs specifically provided by the Employment Agreement.

## COUNT II

**Violation of Maine's Uniform Trade Secrets Act (Temple and Black Mountain)**

64. The allegations contained in paragraphs 1 through 63 of the Complaint are incorporated herein by reference.

65. Alcom's confidential and/or proprietary information that Temple and Black Mountain are using constitutes a "trade secret" as that term is defined in 10 M.R.S. § 1542(4).

66. Such confidential and proprietary information is not generally known or readily ascertainable by those other than selected Alcom personnel and Alcom takes careful efforts to maintain the confidentiality of this information. This information has been developed with a substantial amount of effort and investment by Alcom and its personnel and is therefore valuable to Alcom in this competitive market.

67. Temple and Black Mountain have and will continue to misappropriate this information, using it to take current customers away from Alcom by capitalizing on market and pricing information meant only for use by Alcom personnel.

68. Temple's and Black Mountain's conduct knowingly and intentionally violates Maine's Uniform Trade Secrets Act, 10 M.R.S. § 1541 *et seq*.

69. Alcom has been damaged as a result of Temple's and Black Mountain's conduct in an amount in excess of $75,000.

70. Alcom has suffered and will continue to suffer ongoing and irreparable harm necessitating legal and injunctive relief.

## COUNT III

**UNJUST ENRICHMENT (Temple)**

71. The allegations contained in paragraphs 1 through 70 of the Complaint are incorporated herein by reference.

72. Alcom conferred a benefit on Temple by providing him with access to confidential information, trade secrets, good will, and training obtained within the scope of his employment.

73. Alcom has a continued ownership interest in its confidential information and good will.

74. Temple has retained and/or unlawfully utilized information to his benefit.

75. By his acts, Temple has been unjustly enriched at the expense of Alcom.

**WHEREFORE,** Alcom requests that this Honorable Court enter the following relief:

A. A temporary restraining order, and preliminary and permanent injunction:

   i. Enjoining Temple from soliciting Alcom's customers and violating his Employment Agreement with Alcom for a period of twenty four months from the date of his termination from employment with Alcom;

   ii. Enjoining Temple from participating in the ownership of and/or from working for himself and/or Black Mountain or another direct competitor of Alcom's for a period of twenty four months from the date of his termination from employment with Alcom;

   iii. Enjoining Temple and Black Mountain from possessing, using or disclosing Alcom's confidential and/or proprietary information in violation of the provisions of the Employment Agreement and/or in violation of the Maine Uniform Trade Secrets Act;

B. An order requiring Temple and Black Mountain to return Alcom's confidential information;

C. Judgment in Alcom's favor and against Temple and Black Mountain for money damages to compensate Alcom's sales lost as a result of Temple's unlawful solicitation of Alcom's customers;

D. Judgment in Alcom's favor and against Temple for its costs of litigation, including reasonable attorney's fees; and

E. Such other further relief as justice requires.

Dated at Portland, Maine this 4th day of May, 2020.

                                                */s/ Jeana M. McCormick*
                                                Melissa A. Hewey
                                                Jeana M. McCormick

                                                *Attorneys for Plaintiff*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
mhewey@dwmlaw.com
jmccormick@dwmlaw.com

**[Verification Appears on the Next Page]**

## VERIFICATION

I, Daniel Mills, Sales Director of Alcom, LLC, hereby affirm under the penalties of perjury as follows:

1. I am over the age of 18 and otherwise competent to testify.

2. The factual allegations in the foregoing Verified Complaint are, to the best of my knowledge and belief, true and accurate.

Dated: May 4, 2020                      _/s/ Daniel Mills_
                                        Daniel Mills
                                        Sales Director, Alcom,LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2020 I electronically filed the above Verified Complaint with the Clerk of the Court at newcases.bangor@med.uscourts.gov, and have sent notification of such filing to James Temple at jtemple13@yahoo.com and jtemple@bmtrailer.com and Black Mountain Trailers at nsnyder@bmtrailer.com.


                */s/ Jeana M. McCormick*
                Jeana M. McCormick

                *Attorney for Plaintiff*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
jmccormick@dwmlaw.com